Right, our next case this morning is number 24-1047, Fiorcese, did I get that right? I believe so, your honor. That's good, versus Colorado Technical University. Counsel, you may proceed. Thank you, your honor, and may it please the court, Michael Rauch together with Joe Dietrich on behalf of the appellant, I'll attempt to reserve three minutes for rebuttal. The False Claims Act's public disclosure bar ensures that relators asserting fraud against the government, and thereby attempting to collect a sizable bounty of treble damages, are able to proceed only if their claims are truly new and previously undiscovered. Binding precedent requires courts to evaluate all of the public disclosures together, not in isolation, and here the record demonstrates that the government and news media were discussing the same types of fraud alleged in the complaint. I'm going to stop you, and let's talk about subject matter jurisdiction. I am not sure that the collateral order doctrine applies here. The Supreme Court has given us very strong direction not to expand it. Why should we exercise jurisdiction over this interlocutory appeal? The short answer to the question, your honor, is because this order can only be effectively reviewed at this point in the litigation, and that's the only element that's disputed here, the third element of the collateral order doctrine, and I think perhaps the easiest way to analyze this, or to look at what those interests are, are to juxtapose this with the court's most recent discussion of that doctrine in Muhammad Jones. Before you do that, we're dealing with an affirmative defense, right? We believe that it's jurisdictional, your honor, because of the structure of the False Claims Act. That being said, I don't think it matters for purposes of collateral order jurisdiction whether or not it's characterized as jurisdictional or an affirmative defense. The interests are the same either way. Just like qualified immunity would work as an affirmative defense or a statute of repose, both of which are reviewable under the collateral order doctrine, the interests are the same. Again, for the reasons we've briefed, because of the separation of powers concerns and the sort of grant of jurisdiction that Congress provides to relators in the False Claims Act, we believe that it must be characterized as jurisdictional, but that isn't the controlling question for purposes of the collateral order. There are a lot of immunity cases in which the collateral order has been applied. Is there a single one under the False Claims Act, Keytown? Under the public disclosure bar, there is not, your honor. This has never been adopted or rejected by any court of appeals. So you're saying no one's ever tried it? I believe that's correct. No case at a court of appeals that we've found has reported any decision on the collateral order doctrine in this juncture. Do we take a clue from that or not? I don't believe so, your honor. First of all, I think it's because they're relatively rare. As we've discussed in the reply brief, we found only four examples in the past decade from district courts within the Tenth Circuit where a public disclosure bar order was denied. So I think that has something to do with it as to why they aren't there. But isn't a public disclosure bar analysis inherently factual? No, your honor. Don't you have to go through every article or available information and tease through it and find whether it should have put the government on the trail of the claim? That's not a fact inquiry, though, your honor. It's not? No, it's not. Because it's taking factual allegations as they're pled in the complaint and comparing those to public disclosures that are in the record, and then making a legal determination as to whether those are substantially the same. It's akin to the second step of a qualified immunity analysis, where the court is looking at whether the allegations are made are substantially similar to existing authority within the circuit or a robust consensus of cases, as this court would do in the qualified immunity. It's the exact same type of analysis. One is a legal analysis based on precedent. And this is a question of going through all of the public information and trying to make an assessment of whether the government was already on notice. It's not whether the government was already on notice. It's whether it could have been based on what's out there. And that's an important distinction. Because I agree with you. If the determination was whether or not the government was actually on notice of this, that's a factual question, right? But when you're comparing two things that exist and making a determination of whether the substantially similar test, the legal test is satisfied, that's a legal determination. Contrast it, for example, your honor, with Tucker, right? Where the ministerial exception and this court, you know, dealt with that. Highly factual. Highly factual. And the Supreme Court has said that that's a highly factual determination. You've got to look at the actual job that that individual is doing. A very fact-intensive analysis as compared to here. Again, analogize it to the second step of the qualified immunity inquiry, where you've got a set of allegations, a set of publicly existing facts. Well, counsel, what about the first step, qualified immunity? I mean, you're making it sound as if the public disclosure bar is decided at the motion to dismiss stage and no other stage, and you lost on that. But if you're unsuccessful here, wouldn't you try again at summary judgment? Perhaps, your honor. And that would be factual. I don't believe so. I don't believe... Well, the facts aren't... If you lose now, don't you need to show something to prevail at summary judgment? I mean, if everything stays the same, you're just repeating the motion to dismiss. I appreciate that, your honor. I give you that I suppose there could be certain circumstances, depending on how a record developed, that there could be factual disputes. And just like with qualified immunity, the Johnson line of authority, that this court wouldn't have jurisdiction, perhaps, over the factual disputes. But certainly... And I'm not sure, actually, your honor, how much it would change what the appropriate analysis is if you were at summary judgment, because you're still going to be required to look at what the facts were when they filed the lawsuit. Because that's what's important when you're looking at whether they were publicly disclosed or not prior... Well, that may be. But you're not in a position then to have to accept what was alleged in the complaint and draw all inferences in favor of the complainant. You're in a different situation and you're going to be making different arguments and the record may be developed. So I'm not sure I see this analogy to prong two of qualified immunity as standing up here. Well, all I was saying, your honor, is that especially at this stage of the proceeding, certainly at a motion to dismiss phase, that's the same analysis that's being done. And my point in saying that isn't that it's perfectly akin to qualified immunity, because as you appreciate, it's not. Because there's a whole first prong of qualified immunity as well that I think is more commonly where those factual determinations are what's going to make the difference. And if I could draw a couple of distinctions... You make a number of arguments on this issue, and I'm interested in asking you about a couple of them. One of them is a separation of powers argument. But I'm not sure that necessarily always cuts in one direction in a context like this. Because expansion of the collateral order doctrine, which is what you're urging here, puts the judiciary in a position of making an exception to a congressionally enacted statute, 1291. So it seems to me there's a separation of powers concern in going with your argument. I appreciate that, your honor. I think that's obviated somewhat. And let me get to the broader separation of powers question in a minute. But I think it's obviated somewhat that you have a congressional directive here, which you didn't have in Muhammad or Tucker, for example, that these cases shall be dismissed in a separate statutory section titled certain actions barred. And that the Supreme Court and this court have articulated that that is a threshold inquiry about whether a case may even proceed or not. So it's a congressional mandate. It's a congressional directive. The broader separation of powers discussion is also important here. While your honor's opinion in Muhammad articulated that the separation of powers concerns there were generic or abstract, here they're anything but. In the False Claims Act, Congress is assigning the United States injury and authority to proceed on a lawsuit to a private citizen. And in doing so, it's thereby ceding the executive branch's authority to control that lawsuit, to bind the government to certain positions in litigation, to share in the recovery of proceeds on behalf of the government. So when Congress excises from that assignment, from that authority, a certain subset of cases, and says we're not going to allow these type of cases to proceed, that's the separation of powers concern that's inherent here. Because, again, it's Congress that's ceding executive branch authority to control litigation through that statute. So that's... Well, but wait a minute, counsel. Sure. On the public disclosure bar, if the government wishes to do so, it can intervene in the action, correct?  And it can oppose dismissal on public disclosure grounds. So the executive can be fully involved if it wishes to do so. And not only that, but your argument that the public disclosure bar is a right to avoid trials undermined by that because the government can come in under those circumstances. So how does that support your argument for collateral order review here? Well, because I think it's because of the articulation by the Supreme Court and by this court that it's a bar to the suit proceeding in the first place. So of course, it's a protection of public resources, the ongoing monitoring of the litigation. Well, so is Article III jurisdiction. But we don't take interlocutory appeals for dismissal on Article III grounds. Well, that's right. That's right, Your Honor. So why should we do it here? Well, you should do it here because, one, because of the congressional directive that these cases shall be dismissed, that Congress spoke. And in Congress doing so, that's the public interest that's articulated on behalf of Congress. Congress also said no appeal until a final judgment. You're wanting to bring a piecemeal appeal. And you're saying that this advances efficiency of government? How is it efficient? It's efficient if you're right, that the district court was wrong. But it's not efficient if the district court was right. It's just delaying the progress of the case. I don't think that's quite right, Your Honor. I mean, you're right that there is an appeal that has to be taken. So I'm a little bit right. I'll concede that, Your Honor. But of course, the lion's share of the expense and the expense of the government, because remember, these are going to involve government agencies, is in the discovery process, right? And the best example I can give to you, the example we were able to find within the Tenth Circuit was the Rockwell case, which was filed in 1989, I believe, eventually adjudicated on the public disclosure bar and dismissed in 2007 after going up to the Supreme Court. So if we're saying that final judgment review is effective at furthering Congress's goals and nipping this litigation in the bud, I think the law that's out there represents otherwise. You have just two minutes left if you want to talk about the merits. I'll say I want to make two quick points about the merits. With respect to the substantially the same inquiry, if you line the district court's opinion up here against Reed, I really do think they're irreconcilable. I think the key error that the district court made is in analyzing the public disclosures individually as opposed to together. And most importantly, the case law demonstrates that there's no need for these articles to say fraud or to use any sort of magic language. But even if there was, look to pages 98 through 118 of the appendix, which are the Republic Report articles that talk about this specific defendant, the specific system that was used to perpetuate the supposed fraud, as well as calling for greater False Claims Act enforcement. Was there any, none of the public disclosures talked about Intellipath being used to facilitate a fraud, did it? Yes, they did, Your Honor. Those are the articles, so those are the articles at 89, I think it's 89 to, I'm sorry, 98 to 118 of the appendix. The Republic Report articles talk about Intellipath being used to skip over certain coursework and then calling for False Claims Act enforcement on that basis. Okay. So, and certainly enough to put the government on the trail of fraud. If you look at the generic nature of the allegations that were made in Reed, that, I mean, it's nowhere close to the level of generality. They're much more specific in this case. So are you saying that alone was enough? I do think that alone was enough, but here you've got a lot more. Well, do you have a lot more on the credit hours, or do you just have a lot more on other things? A lot more on the credit hours. If you look at the IG reports from 2018, as well as 2015 IG audit, I think those also are talking about credit hour issues sufficient to put the government on notice. I'll reserve what I've got left for rebuttal, if I may. You may. Thank you. Hello, and may it please the Court. The threshold question here, as your honors noticed, is whether this is appealable under the collateral order doctrine. This Court recently, in Muhammad v. Jones, made clear that the collateral order doctrine is for relatively rare situations, particularly to constitutional immunities, which this is clearly not. This derives completely from the statute. And the second category is orders that would be moved following final judgment. The Muhammad Court also urged that this is a heavy burden to me. This order would not be moved following final judgment. Does it matter if we treat it as jurisdictional or an affirmative defense? I don't think so. I don't think this is jurisdictional. Congress, in response to ARBA, took out jurisdictional language while leaving it in other places in the False Claims Act. I don't know what more Congress would have done. I've never seen a law say this is an affirmative defense. So, but I don't think that affects whether the collateral order doctrine applies. Rockwell is an example of where public disclosure is determined after final judgment. Also, like your honor pointed out, they can bring this up again in summary judgment. That's what Reid is a review of. And the government can inject itself anytime it wants, right? Basically, yes. And after Polanski, dismissal authority would be very easy for the government to get. So, on public disclosure or almost any other grounds. So, if the executive wanted to be in charge of the case and wanted it to go away, it's a very, very low bar to me. This court also reiterated the Muhammad Standard and MediCal v. GEO group more recently. There, they denied years of immunity collateral order cases. One important thing that defendants argue here is the lack of cases that collateral order, that public disclosure was denied on, is evidence that there won't be a proliferation of this defense. But as Judge Phillips pointed out, the fact that litigants don't seem to think it's collateral order is telling here. If this court were told that public disclosure is a collateral order, we will see that in every False Claims Act motion to dismiss. Most False Claims Act cases are about Medicare and Medicaid. Healthcare is a sixth of the U.S. economy. Some of the defendants are the biggest companies in the world. There's hundreds of articles a week about the healthcare system being inefficient, too expensive, often defrauded. It would be extremely simple in almost any of these cases to put together a callable argument that the government was put on trail of fraud. The fact that it's not done and not appealed is an indication that Defense Bar does not think this is a collateral order based on prescriptions by the Supreme Court in Mohawk and this court in cases like MediCal and Muhammad. Why shouldn't we exercise jurisdiction based on our decision in the Los Lobos case? So Los Lobos, I would say, is different on two points. First, Los Lobos would have created a circuit split. So it's not a first impression case where this court would be creating an exception that's a collateral order. Other courts had done that before the 10th Circuit lifted Los Lobos. Second, on the face of the statute and legislative history of the anti-slap law that Los Lobos is about, the point is to prevent litigation. That is the stated goal of the statute on its face. Here, no one is arguing that the goal of the government's public disclosure bar is to prevent litigation against defendants who may have defrauded the government. Congress doesn't want relators parroting public media reports, OIG reports, et cetera, and collecting rewards. But it's not like Congress's stated goal was, if there is a newspaper about a fraud, we don't care about getting more information about that fraud. There's no legislative history like there was in Los Lobos. The right path here would have been to seek interlocutory appeal if this was some sort of special case. It's not. Or to wait until final judgment like Tucker urges the court to do like defendants did in Rockwell to appeal. I'm happy to address the merits, or I'm happy to answer more questions on this. Oh, apologies. One other point. The vast majority of cases that they point to as the collateral order doctrine is applying to have nothing to do with the litigation continuing. Their mood following final judgment because someone was forced a prison transfer. Someone was forced to take involuntary medicine. Someone is institutionalized. Proceeds of a claim were already split. Can't put the toothpaste back in the tube types of issues. Here, like the statute of limitations and many, many other affirmative defenses, the impact of the litigation continues. The Supreme Court and Digital Equipment Corporation made it pretty clear that almost any affirmative defense can be characterized as a right not to stand trial. That does not make them subject to the collateral order doctrine. Could you respond to counsel's point about separation of powers? That on the one hand, we have 28 U.S.C. 1291, but on the other hand, he was quoting language from the False Claim Act that maybe counteracts the separation of powers concern. Could you address that argument? Yeah, so first thing, the separation of powers concern I don't think is there. I think the Supreme Court found that not to be a concern in Article III cases and Stevens, and every court except one recent Middle District Florida question has found no Article II concerns. That being said, I don't think the public disclosure issue touches separation of powers. There are many bars to bringing a false claim to that case. Statute of limitations, not a collateral order, and a bar to bringing an FCA case. There's no argument that that touches separation of powers. The fact that the executive's in control, there's a long history of these cases, and not every bar means a separation of powers issue is pretty conclusive here. And there's no reason why the public disclosure bar is special to triggering the separation of powers issues as opposed to statute of limitations or many other affirmative defenses. Turning to the merits for a minute, there were quite a few public articles and opinion pieces that called attention to the fact that some of these universities were teaching classes that were very easy and were basically pushing students through and collecting tuition. Was it enough to put the government on the trail of a claim involving fraudulent student loans? So I don't think so, and a few specific responses there. First, I think the district court put it pretty succinctly. When they focus on the actual fraud issue, using the telepath software to over-report credit hours while students are only getting 15 or 20 hours of education, claiming it's 135 hours of education, that is not the fraud that was revealed. So is it your position they had to link it to the software in order to put the government on the trail? Not necessarily. And I do want to address the language and read that's on the trail. I think the amicus does a good job with this because the statute is substantially the same. Courts have used the language of on the trail of fraud, but if you look at the Reed court, they're analyzing whether the allegations and the public disclosures are substantially the same as what were later brought to the government's attention. I understand that on the trail of fraud is a way to phrase that and a way that's convenient to think about that. But it's not if the government, the congressional language isn't if the government could have inferred of a fraud or thought of an industry was corrupt, had some overlapping issues with. It's substantially the same. And nothing in the public disclosures is substantially the same as the allegations in the complaint. Would you agree, I think, on the prior argument was represented that the articles included a link to the Intellipaat software? So I'm not sure which exhibit you're referencing. One of the exhibits in the articles references Intellipaat, that article is about recruitment practices. I am open to believing that the recruitment practices of defendant and similarly situated schools triggered FCA liability in some way, just not in substantially the same way that our complaint alleges. The Intellipaat press releases touting the fact that you could skip content, those aren't about fraud. The fact that a software application can be used to better educate students, to better tailor custom content to students, isn't the same thing as skipping content and then not replacing it. That's really vague to me, though, what your answer to Judge McHugh. You heard opposing counsel give us a citation to the record and to declare that that dealt with credit hours and the system that was in place and it sounded pretty good. What do you say in response to that particular citation? So I think he's referencing Exhibit G, the 2020 article by Mr. Halperin, and we agree it references Intellipaat, but nothing to do with the undercounting and over-reporting of credit hours. Like we agree that it was public that CTU was using a software product called Intellipaat and that software product could have been used to skip content, but that's not an allegation of fraud. Like the fact that a product could be pointed towards good or ill is not the substantially the same allegation as it was pointed to ill. Did Judge Jackson reference that one? He did. And what was his conclusion about it? That there are specific claims concerning the misrepresentation of credit hours in the use of Intellipaat by CTU to defraud students and the government. There's very little to be found in the publications or news articles. I'm happy to address the original source discussion or I will ask for this court to recognize that the collateral order doctrine does not apply to public disclosure denials under the FCA or the alternative that the relators' allegations were not publicly disclosed and were not substantially similar to those ads in the record. It's your call. Okay. An original source, I will say that we materially added to anything that is in the purport of public disclosures. Scientia is a really important point here and where Reed turns, the fact that nothing is knowing about the fraud, the fact that CTU is not doing anything with intent or knowledge in public disclosures, it's merely using a software product, is allegations that are added by our relator. I'll also say that, and according to the Reed court, that's where many FCA cases turn and that's what materially added to. I'll also say that us and defendants have a disagreement about the 2010 amendments that are original source language. There is no direct requirement. That was taken out of language and many courts have recognized since that there is not a direct knowledge requirement. They say three cases that they say points to a different conclusion. Two of them, the Northern District of California and the Western District of Pennsylvania and Silbershire and City of Pittsburgh are about the definition of the word independent. Defendants argue that independent means direct and independent, but those courts don't agree. For example, Silbershire said, the most straightforward change in the original source language under the amendments is the removal of the direct requirement that the relator's knowledge must be, quote, direct. City of Pittsburgh held that post-ACA there's no longer, relator no longer has to possess direct knowledge of the fraud. Both those courts hold that the direct requirement is gone. We agree that there is no direct knowledge that the LLC had, but we don't think it matters. That is gone. What about the fact that you're dealing with an LLC? Is that an individual? So that each circuit in this exact context has held yes. I'll also say that this circuit in precision goes through three buckets of original source claims under the old language where it was a direct requirement. The first two buckets it holds are not direct. It does not an original source. We think that amendment changed that. The third bucket it discusses as the knowledge that corporate relator has after formation and doesn't dismiss it based on being a corporate relator. It reasons that it's not an original source because it doesn't add to meaningfully, but not like, there's no threshold issue of an organizational relator. What Judge Jackson said on that issue as far as whether she had shot herself in the foot using his language is whether or not that argument is technically sound, it's easily overcome if the underlying relator identifies herself. Where does that stand? I don't know if I agree with that argument. I think their argument is more about the meaning of the word individual, which they have a case that Supreme Court says it generally means a natural person. Well, I'm trying to get to the natural person and Judge Jackson is saying the way to defeat that argument is for the relator to identify herself and there's a lot of identifying information in here. It's not like it's a secret who taught the two math courses and so forth. That's true. Why has that not happened? She's afraid of retaliation. There is a lot of identifying information that defendants may be able to identify her, but my practice is all FCA. There are a lot of relators that get barred from industries, they get fired from future jobs when something comes out from under CO. Like a future employer might not link this to a specific person. So that's the point of LLC. Thank you. Thank you, counsel. You have a little bit of time remaining. Okay. Three quick points on rebuttal. Two on jurisdiction, one on the merits. With respect to Los Lobos, this court is going to have to reconcile that. And if you look, the interests are the same. The costs of litigation, nipping litigation in the bud. Second, the analogy to statutes of repose is uncontested and that's the best analogy for use here. And third on the merits, counsel said the question isn't whether the government could have inferred fraud. That's exactly the question. That's exactly what the Reid court said at page 749. It's whether the government could have inferred fraud. It absolutely could have based on the public disclosures here. We ask that the court reverse. Thank you, counsel. Thank you. Appreciate your arguments this morning. The case will be submitted and counsel are excused.